**LAUREN DI CHIARA**
Attorney-at-Law

52 Duane St., 7th Floor
New York, NY 10007

Tel: (516) 695 – 6801                                       Email: laurendichiara.law@gmail.com
                                                            Admitted in SDNY, EDNY, USSC, NY & CT

**Via ECF**

Hon. Lewis A. Kaplan
United States Courthouse
500 Pearl Street
New York, New York 10007

November 12, 2024

        **Re:** *United States v. Marlon Mackey,*
            24 Cr. 230 (LAK)

Dear Judge Kaplan:

    I represent Marlon Mackey in the above-referenced matter and make this submission on behalf of Mr. Mackey in advance of his sentencing scheduled for November 26, 2024. Mr. Mackey pled guilty pursuant to a plea agreement with the government to Count One charging Mr. Mackey with solicitation and receipt of a bribe by an agent of an organization receiving federal funds, in violation of Title 18 U.S.C § 666(a)(1)(B).

    The stipulated guideline range by the parties pursuant to the plea agreement results in a recommended sentencing range of 18-24 months incarceration followed by a period of supervision. Probation has recommended a below guidelines sentence of 9 months incarceration. However, while I appreciate Probation's downward variance, for the reasons addressed in greater detail below, I believe Probation's recommendation does not adequately consider several factors pursuant to 18 U.S.C. § 3553(a), and I would respectfully request Your Honor sentence Marlon to a non-incarceratory sentence. In support of this sentencing submission, I have attached letters from friends and family in support of Marlon, a Report written by Dr. Sanford L. Drob, a letter from EXODUS Transitional Community, a letter verifying Mr. Mackey's newfound employment, as well as a letter and PowerPoint exhibit[1] to Your Honor from Marlon.

---

[1] The PowerPoint has been converted to PDF and attached with Marlon's letter as Exhibit A.

In deciding what sentence is appropriate for Marlon, I respectfully suggest that there are several issues for the Court to consider. Marlon has no prior criminal history. This is consistent with his lengthy commitment to obtaining and maintaining gainful employment. Marlon's personal history and characteristics. The extraordinary remorse that Marlon has expressed and his early, complete and unequivocal acceptance of responsibility. Marlon is a dedicated family man and father, who maintains an active role in his children and grandchild's lives. Significantly, I urge the Court to consider Marlon's actions since the time of his arrest in this case. Taking into account Marlon's life history, the continued support of those close to him, which he appreciates, his commitment to living a productive law-abiding life going forward and his full acceptance of responsibility and unqualified remorse, a below guidelines sentence, without incarceration, would be appropriate at this point in time for this defendant.

Marlon has acknowledged his wrongdoing and accepted responsibility for his actions when he pleaded guilty at a very early stage of the proceedings. Marlon acknowledges that he must take complete responsibility for the poor choices that he made during that time. This is evident in the way Marlon continues to take accountability and express his unqualified remorse in his letter to Your Honor. Exhibit A.

I sincerely believe that a below guidelines sentence of Probation with home confinement is a sentence that is reasonable, and one that is "sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph 2" of 18 U.S.C. § 3553(a).

**I.      Marlon's History and Characteristics**

Marlon is a loved by those close to him as evidenced by the heartfelt letters attached as Exhibit C. These letters describe a man who is supportive of friends in times of struggle as described letter from Rahn Jackson, someone who has known Marlon his whole life. Exhibit C. Marlon supported his friend Terrence Elie through the difficult deaths of both his mother and grandmother. Exhibit C. These friends describe Marlon as a pillar of strength emotionally for others when they needed someone most. However, Marlon's own life is not without its share of hardships and trauma which unfortunately contributed to his negative perception of himself and the way he believes others view him.

Marlon grew up in Queens, New York, with his mother, Victoria Mackey, Harry Mackey and his two younger sisters. His mother raised Marlon and his sisters as Jehovah's Witnesses. Marlon's devotion to his religion throughout most of his life has served as a strong guidance for how he has chosen to live. His commitment to his faith provided Marlon with a "deep sense of what is right and wrong" and by the accounts provided in the letters describing the ways in which Marlon takes care of his family, friends, colleagues and neighbors, it is clear that Marlon tries to provide help and positivity to those he surrounds himself with. Exhibit C; see also letter by Victoria Mackey contained within Exhibit C.

Marlon never had a stable male role model to turn to during his upbringing. He grew up raised almost entirely by his mother. Throughout Marlon's childhood, the man he believed to be his father was Harry Mackey. Harry was incarcerated throughout most of Marlon's life due to Harry's involvement with criminal activity, such as, heroin and robberies. PSR ¶66. Because of Harry's absence, Marlon had to assume greater responsibilities as the only man in a household

which comprised of Marlon, his mother and his two sisters. His mother, Victoria, described in her letter that "he often had 'extended' responsibilities for the household needs." Exhibit C. Marlon's mother was often out of the home working to support the family leaving Marlon to take on the responsibilities of "caring for his siblings and cousins, as well as completing chores and running errands." PSR ¶ 70. Although Marlon's mother was able to provide Marlon and her family with the basic necessitates, the neighborhood he grew up in was low-income and Marlon observed violence and drugs surrounding his home. PSR ¶ 71. While Marlon stayed away from turning to the neighborhood and the negative environment outside his home, he was subjected to physical discipline within his home which resulted in visible injury to his body. PSR ¶¶ 71-72. Marlon suffered abuse at the hands of his mother and maternal grandfather. PSR ¶ 72. While Harry's presence in the home was not regular due to his periods of incarceration, when he was home, his physical abuse was the greatest, using either his fists or a belt on Marlon. PSR ¶ 72. Harry's abusive behavior was not limited to only Marlon. Often, Marlon would hear Harry beating his mother "through the walls of their apartment." Exhibit B at 8-9.

Marlon's home now consists of his wife, his stepdaughter, her son and his three-year-old son. Marlon is described in the letters by his family as someone who is committed to his family and taking care of them has always been of the utmost importance to Marlon. His stepdaughter has significant health issues and is expected to undergo another surgery on her pancreas. PSR ¶ 74. Additionally, Marlon maintains a close relationship with his mother. Marlon sees her at least twice a week and is a source of support with her medical issues. Exhibit C, see letter by Shaunise L. Mackey-Spivey. Marlon additionally has played an active role in his niece's life acting as a father-figure to her and as she describes in greater detail in her letter, he was the primary male role model throughout her life. Exhibit C, see letter by Tatianna Mackey.

As evidenced by the letters in Exhibit C, Marlon has devoted himself to those in his life and especially prioritized being there for his family and those in need. Unfortunately, his own life never had a centralized, positive, male figure for Marlon to rely upon. Perhaps that is the driving force behind his commitment to being that person for those he is surrounded by.

Unfortunately for Marlon, not only did he not have a stable male role model, but the largely absent and abusive person he believed was his father until early adulthood was not. One of the most pivotal moments in Marlon's life was when at the age of 24, he learned that the man that he believed was his father, Harry Mackey, was in fact not his father. Marlon became aware that his biological father was a man he had never known his whole life. This realization, that Marlon did not share the same father as his sisters took a dramatic toll on Marlon emotionally and psychologically. PSR ¶78. Marlon felt as though his "whole world was shattered" when he learned the truth of his biological lineage. Exhibit B at 9. This information came to him in a way which caused Marlon to lose trust in others at the greatest level. This manifested, as described by Dr. Drob:



3



Exhibit B at 9.

## II.  Nature and Circumstances of the Offense

The investigation showed that from about 2014 through 2023, Marlon accepted approximately $25,000 in bribes in exchange for awarding no-bid contracts from the New York City Housing Authority ("NYCHA").

There is no excuse for the decision that Marlon made to engage in this pervasive NYCHA culture of receiving bribes to afford contracts to those who paid to obtain the job. It is difficult to understand how a man who had otherwise lived a law-abiding life and who strode to do right throughout his life, would make such a regrettable decision. However, although in no way an excuse for the conduct, Dr. Drob provides insight into what led Marlon to make such wrong choices here.



Exhibit B at 9.

Marlon's desire to prove that he was the man for his family that he never had growing up coupled with Marlon's feelings of inadequacy had him creating unrealistic expectations of what he needed to provide for his family in order to succeed. Marlon perceived himself as not being enough for his family if he could not provide for them fully.

## III.  Marlon's Acceptance of Responsibility and Unqualified Remorse and Path Forward

In determining a suitable sentence for Marlon, it is highly appropriate for the Court to consider the level of remorse and regret Marlon has expressed, notably, when at a very early date Marlon took ownership of his conduct and pleaded guilty in this case. On April 15,

approximately two months after his arrest, Marlon expressed fully his conduct and took complete accountability for what he had done. Throughout Marlon's acknowledgement of his behavior, he stood soberly and at times cried while explaining what he had done. The Court took notice of his demeanor and twice acknowledged that Marlon showed that he was "very remorseful" for what he had done. Dkt. 18. The following is an excerpt from the transcript of these proceedings:

| | |
|---|---|
| Marlon: | I knew these actions were wrong, and I'm very -- very remorseful for what I did. |
| The Court: | Take your time, Mr. Mackey. |
| Marlon: | I apologize. |
| The Court: | No need to apologize. The Court notes that you are very remorseful for what happened and that's part of the record. |

Doc. 18, 25:18-24

The Court acknowledged Marlon's demeanor again when stating, "Mr. Mackey, I can see that you are obviously remorseful of your crime and that you understood that what you were doing was wrong." Doc. 18, 26:6-8.

Furthermore, Marlon details his extreme shame for making the choice to engage in this activity. He feels as though he has let down the family he has worked so hard to provide for and support. In his letter to Your Honor, Marlon expresses a very clear understanding of how wrong his decision-making was, that he has a clear acknowledgment of the negative impact this has had on his relationships, but also, and perhaps most importantly, insight into why he made those decisions. Without a true insight to understanding the "why" and true commitment towards change, Marlon's remorse would mean nothing. However, as evidenced by the words in Marlon's letter and the work he has put in since his arrest in this case, it is clear that Marlon is now on the right path and will never make such poor decisions again. As he states in his letter:

> My poor choices began by placing unrealistic pressures upon myself. I felt that I was not fulfilling my role as a husband and father. My poor economic situation temporarily blinded me. I forgot who oversaw my life and made decisions based on my faulty thinking. There is a scripture in the book of Proverbs 3:6,7 "6- In all your ways take notice of him and he will make your paths straight 7-Do not become wise in your own eyes, Fear Jehovah and turn away from bad."
>
> My resolve is to honor my dedication to my faith and family and not fail them again. It is a process that I will see through every day.
> Exhibit A.

These are not just words that Marlon has written to Your Honor. Starting in February, Marlon immediately sought new employment and began working part-time as an Uber driver. In the beginning of April, Marlon began enrolling in programs at EXODUS "dedicating himself to work on addressing his past behavior." Exhibit D. Marlon voluntarily committed himself to engaging with this community to better understand his own behavior and focus on changing

5

himself for the future. Marlon explored as many programs as he could, believing that there was nothing he couldn't learn from. Marlon didn't only attend these programs, but he was a positive influence on other members of the community seeking the same resource that he was. "Mr. Mackey became instrumental in our workshops and programs here at Exodus as he has always displayed a positive attitude, is always engaging and providing constructive input and participation and other participants have also followed his lead during group sessions." Exhibit D. At Exodus, Marlon also engaged in an exercise to help him focus visualizing why he engaged in this conduct and deeply evaluate himself and his behavior. Exhibit A, see PowerPoint.

After completing the Wilderness Program, a program focused on job-readiness training, Marlon was able to obtain a job at Times Square Alliance as a sanitation worker. Exhibit E. Marlon works Monday through Thursday from 7 pm until 3 am. After resigning from his Employment at NYCHA, a job he loved, took pride in and committed to for 31 years, Marlon has obtained a stable job and is committed to proving to his family and himself that he can be the father and husband he had always aspired to be.

### IV. Consideration of a Non-Incarceratory Sentence

There have been other defendants involved in this case who have received sentences which did not involve incarceration. At least three defendants, who had either comparable or greater bribe amounts, received sentences which were a combination of probation and home confinement. These defendants, Lucas (24-CR-148 (LTS)), Williams (24-CR-260 (JGLC)), and Fuller (24-CR-181 (DEH)), took bribe amounts that were $19,000, $21,350, and 37,800 respectively. Of course, I am not aware of the myriad of factors and issues in the lives and cases of these other defendants, but they had the same stipulated to guidelines range of 18 – 24 months incarceration and none were sentenced to a period of incarceration. Imposition of a non-incarceratory sentence for Marlon will not create a sentencing disparity.

In this case, I respectfully submit, Marlon would benefit from home detention with continued and ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ and continued employment. Marlon is at a substantially low risk to reoffend and is fully engaged in a path towards success. His complete ownership of his behavior and extraordinary remorse make clear that Marlon has respect for the law. According to Dr. Drob:



Exhibit B at 10.

Furthermore, Marlon is a Zero-Point Offender having no prior criminal history. The USSG have been updated to provide additional avenues for alternatives to incarceration in circumstances that previously were not as encouraged. These changes occurred in large part due to the science suggesting that incarceration is not necessary in many cases, relevant to rates of recidivism or to achieve justice. Pursuant to USSG § 5C1.1 Application Note (10)(B), there are times when a sentence which is not imprisonment "may be appropriate."  I respectfully suggest

that the circumstances of this case and the qualities of Marlon are precisely the circumstances to which Application Note (10)(B) refers.

## VI.    Conclusion

Accordingly, for the reasons detailed above, I respectfully believe that a below Guidelines sentence of Probation and home confinement, allowing Marlon to continue to work so he can fully repay his restitution in this case, ███████████████████, is a sentence which meets the aims of justice and imposes a sentence that is sufficient but not greater than necessary to comply with the purposes of sentencing.

Respectfully submitted,

/s/ Lauren Di Chiara

**Lauren Di Chiara**
Counsel for the Defendant

CC:    All Parties via ECF

7